J-A02027-19

2019 PA Super 115

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY MARTIN DUKE | : | |
| | : | |
| Appellant | : | No. 1293 MDA 2018 |

Appeal from the Judgment of Sentence November 22, 2016
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007563-2015

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

OPINION BY DUBOW, J.:                                        **FILED APRIL 12, 2019**

Appellant, Timothy Martin Duke, appeals from the Judgment of Sentence entered in the York County Court of Common Pleas on November 22, 2016.  He challenges the trial court's denial of his Suppression Motion, averring that the search of his garage was an illegal warrantless search and any evidence obtained thereafter was "fruit of the poisonous tree."  After careful review, we agree.  We, thus, vacate Appellant's Judgment of Sentence.

The facts and procedural history are as follows.  On October 23, 2015, Pennsylvania State Troopers Joshua Koach, Kyle Yeager, and Alan Krall went to Appellant's home at 4724 Glatfelter Road in Seven Valleys, York County, in

an effort to locate Appellant's son, Brandon.[1]  The troopers did not have a warrant to search Appellant's property.[2]

Appellant was standing at the end of his driveway holding his small dog when the troopers arrived.  Appellant informed the troopers that Brandon was incarcerated in Lancaster County Prison and, thus, not on the premises.[3]  N.T. Suppression, 6/29/16, at 12-13.

Trooper Krall then asked Appellant for permission to look through Appellant's house to confirm that Brandon was not there.  *Id.* at 13, 28, 51. Appellant denied Trooper Krall's request to search.  Appellant, who was holding his dog, then retreated up his driveway toward his garage.  *Id.* at 29, 51, 55.

_____

[1] The troopers were acting at the behest of troopers from the Lancaster County barracks who earlier that day had attempted to execute a New York state-issued arrest warrant for Brandon at an address in Lancaster County.  While at the address listed on the New York state warrant as Brandon's last known address, the troopers received a tip that Brandon resided with Appellant in York County.  Troopers Koach, Yeager, and Krall proceeded to Appellant's residence in search of Brandon, without a copy of the New York-issued arrest warrant or any other warrant.

[2] **See** Trial Ct. Op., 2/23/17, at 5 (discussing the Commonwealth's stipulation at Appellant's non-jury trial that "the[ troopers] would have testified that they had made a warrantless entry into the attached garage[.]").

[3] Brandon had been incarcerated in Lancaster County Prison since September 11, 2015, where he was serving a six-month sentence.  The troopers did not make any effort to verify Appellant's report that Brandon was incarcerated until after they returned to the station.  N.T. Suppression at 14, 27-28, 50.

Notwithstanding Appellant's denial of consent to the troopers' request to search, Troopers Koach and Yeager followed Appellant up his driveway towards his attached two-car garage. Appellant did not make any threats or move towards the troopers, and the troopers did not instruct Appellant to stop walking towards the garage. *Id.* at 30-31.[4]

Still without Appellant's consent to be on his property, the troopers went further onto Appellant's property, following him while he walked towards his garage. The troopers then observed inside the garage a compound bow and arrow, a crossbow, and a long gun or rifle. They also smelled marijuana. *Id.* at 14-15, 31-32. The troopers then entered the garage, again without Appellant's consent, and found five or six marijuana plants drying in Appellant's garage. *Id.* at 15-16, 35-36.

Based on this discovery, the troopers arrested Appellant. They subsequently obtained a search warrant for Appellant's home and found additional marijuana plants. The Commonwealth charged Appellant with one count of Manufacturing with Intent to Deliver, 35 P.S. § 780-113(a)(30).

On January 15, 2016, Appellant filed an Omnibus Pretrial Motion seeking to suppress physical evidence that the state troopers obtained from Appellant's property and statements that Appellant made to the troopers. Appellant argued that the troopers conducted an illegal warrantless search of

---

[4] The garage door on the right side was closed and on the left side was open.

Appellant's garage and that the evidence they collected was the result of that illegal search. Appellant also sought the suppression of any statements he made to police prior to the issuance of **Miranda**[5] warnings.

On June 29, 2016, the trial court held a hearing on Appellant's Motion to Suppress. Troopers Koach and Yeager testified on behalf of the Commonwealth. They testified that they suspected that Appellant had lied about Brandon not being inside and had followed Appellant up his driveway because they were unsure of his intentions and wanted to make sure he did not go for a weapon. **Id.** at 15, 30, 32, 52. Trooper Koach also testified that Appellant "indicated there is no way we are getting to his house." **Id**. at 29. Trooper Koach also admitted that it was possible that Appellant had asked the troopers to leave his property. **Id**.

Appellant testified on his own behalf and offered the testimony of Trooper Krall. The trial court credited the testimony of the Troopers Koach and Yeager over Appellant's, and denied Appellant's Motion that same day. Relevantly, the trial court concluded that exigent circumstances, namely "officer safety," justified the troopers' warrantless incursion into Appellant's garage. Trial Ct. Op., 2/23/17, at 5.

On November 22, 2016, Appellant proceeded to a stipulated non-jury trial and the court found him guilty of the above offense. The court immediately sentenced Appellant to a term of 3 years' probation.

_____

[5] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Appellant did not file a Post-Sentence Motion, but did timely appeal. On October 24, 2017, this Court affirmed Appellant's Judgment of Sentence. **See Commonwealth v. Timothy Martin Duke**, No. 2093 MDA 2016 (Pa. Super. filed Oct. 24, 2017) (unpublished memorandum). Following its review, however, the Pennsylvania Supreme Court vacated this Court's decision and remanded to the trial court for reconsideration in light of the Supreme Court's decision in **Commonwealth v. Romero**, 183 A.3d 364 (Pa. 2018) (*plurality*).[6]

Pursuant to the Supreme Court's directive, the trial court ordered the parties to brief the issues raised in Appellant's Motion to Suppress in light of the **Romero** decision. On July 16, 2018, both Appellant and the Commonwealth complied with the court's Order.

Following its consideration of the parties' arguments and the holding in **Romero**, on July 17, 2018, the trial court again denied Appellant's Motion to

---

[6] In **Romero**, the Pennsylvania Supreme Court considered whether an arrest warrant alone provides the necessary Fourth Amendment protection to permit an officer to enter a residence of a third-party to effectuate an arrest. It held that "[i]f entry into a residence is necessary to search for [an individual named on an arrest warrant], then the warrant must reflect a magisterial determination of probable cause to search that residence, regardless of whether the warrant is styled as an 'arrest warrant' or a 'search warrant.'" **Romero**, 183 A.3d at 403. The lead Opinion "determined that the proper standard for determining whether a suspect lives at a particular residence could not be anything less than probable cause." **Commonwealth v. Boyd Chisholm**, 198 A.3d 407, 414 (Pa. Super. 2018) (citing **Romero**, 183 A.3d at 394). In sum, **Romero** held that "police officers may enter the home of the subject of an arrest warrant to effectuate the arrest, but they must obtain a valid search warrant before entering the home of a third party." **Romero**, 183 A.3d at 389.

Suppress. The trial court concluded that "because [it] found that [t]roopers entered [Appellant's] garage for officer safety concerns as opposed to specifically searching for the target of the arrest warrant in [Appellant's] garage, **Romero** does not apply to this matter."[7] Trial Ct. Op., 9/4/18, at 12.

Appellant timely filed the instant appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

> Whether the searches and seizures conducted by the [t]roopers on Appellant's property without valid search warrants violated the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution.

Appellant's Brief at 4.

Appellant challenges the trial court's denial of his Motion to Suppress. We review the suppression court's denial of a motion to suppress to determine whether the record supports the court's factual findings and whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). In conducting this review, we consider "only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole." **Id.** We are bound by the facts as found by the suppression court, so long as they are supported by the record.

---

[7] Given that the parties do not dispute that troopers in the instant case conducted the search of Appellant's garage without a valid search warrant, and that the troopers did not have an arrest warrant for Brandon when they arrived on Appellant's property, we agree with the trial court's conclusion that the holding in **Romero** is inapplicable herein.

*Id.* We "may reverse only if the legal conclusions drawn therefrom are in error." *Id.*

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa. Super. 2008) (citation and internal quotation marks omitted). "[W]arrantless searches and seizures are . . . unreasonable *per se*, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement." *Id.* at 556.

One exception to the warrant requirement is when probable cause and exigent circumstances are present. "Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment [of the United States Constitution] and Article 1[,] § 8 of the Pennsylvania Constitution." *Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa. Super. 2014) (citing *Commonwealth v. Lopez*, 609 A.2d 177, 178-179 (Pa.1992)).

There are a number of factors to consider when determining whether exigent circumstances exist, including "danger to police or other persons

inside or outside the dwelling."[8] **Commonwealth v. Lee**, 972 A.2d 1, 3-4 (Pa. Super. 2009) (citation omitted). Our Supreme Court has equated the term "exigent circumstances" with "urgent need" to underscore the "heavy burden" on the Commonwealth to prove that prompt police action was imperative. **Commonwealth v. Williams**, 396 A.2d 1177, 1179 (Pa. 1979). The Commonwealth must show by clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent. **Lee**, **supra** at 4. "Whether exigent circumstances exist depends on an examination of all of the surrounding circumstances in a particular case." **Commonwealth v. Flowers**, 735 A.2d 115, 119 (Pa. Super. 1999) (citation and internal quotation marks omitted).

Additionally, "police cannot rely upon exigent circumstances to justify a warrantless entry where the exigency derives from their own actions." **Commonwealth v. Demshock**, 854 A.2d 553, 557 (Pa. Super. 2004).

In considering Appellant's issue, the suppression court found as follows:

> In the driveway of the residence, Trooper Yeager and Trooper Koach spoke with the Appellant and told him they were serving an arrest warrant, and the Appellant told them that the subject of the arrest warrant was his son, who was incarcerated at that time.

---

[8] Factors a court commonly considers in determining whether exigent circumstances exist are: "(1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is above and beyond a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry was peaceable; and (7) the time of entry[.] **Commonwealth v. Lee**, 972 A.2d 1, 3-4 (Pa. Super. 2009) (quoting **Commonwealth v. Roland**, 637 A.2d 26, 270-71 (Pa. 1994).

According to Trooper Koach, Trooper Krall then asked the Appellant about looking through the house to see if the subject was there, and Appellant did not want them near the house.

Then, Appellant began walking away toward his two-car garage, which was attached to the residence. One of the two garage doors was open. **They followed Appellant as he walked back to the garage because his demeanor suggested someone was inside the house, because they did not know his intentions or if he was violent, and because they wanted to make sure that he did not go for a weapon**. While all of the officers were on the driveway, Troopers Koach and Yeager saw a compound bow and arrow, a crossbow, and a long gun or rifle in the garage since the garage door was open. As they got closer to the garage, the officers smelled marijuana. When Appellant was halfway inside the garage, Trooper Koach told Appellant to stop and not to move toward the gun.

Trial Ct. Op., 9/14/18, at 3-4 (emphasis added).

The trial court further noted that "[t]he officers were aware that [Appellant] had a compound bow and arrow, a crossbow, and a long gun or rifle in the garage because the garage door was open." *Id.* The court credited the troopers' testimony, concluding that they followed Appellant when he began walking towards his garage because "they were concerned that [Appellant] was going for the weapons." *Id.* Thus, the suppression court concluded that the circumstances of Appellant's retreat toward his garage gave rise to the troopers' fear for their safety, and justified the warrantless search of Appellant's garage. *Id.* at 11.

Following our review of the record, we conclude that the trial court's factual findings, as set forth above, are supported by the record. We, further conclude, however, that the trial court erred in its application of those facts to

the law because the "exigent circumstances" were not based on facts from which to infer that Appellant intended to harm the troopers.

The testimony at the suppression hearing established that after Appellant denied the troopers consent to search his premises, he began to walk up his driveway to his garage. Appellant was holding his small dog and did not threaten the troopers, retreat in haste, or make any movement towards the troopers. The troopers followed Appellant merely because they "did not know his intentions or if he was violent, and because they wanted to make sure that he did not go for a weapon." Trial Ct. Op., 9/14/18, at 3-4.

We start our analysis with the proposition that once Appellant denied the troopers his consent to search his property, by remaining on and searching his property, the troopers were violating Appellant's Fourth Amendment rights. **Bowmaster**, 101 A.3d at 792. Since the troopers did not have a search warrant, they could only remain on and search Appellant's property if there were exigent circumstances. **Id.** In this case, the trial court concluded that the troopers had the right to remain on and search Appellant's property because of the exigency of officer safety. We disagree.

The trial court's conclusion that the troopers faced the exigency of officer safety assumes that, because the troopers did not know Appellant's intentions or if he were violent, Appellant intended to harm them. Thus, the court concluded that Appellant created an exigency that permitted the troopers to remain on Appellant's property. This lack of knowledge of Appellant's intentions, however, without more, is insufficient to create an exigency that

Appellant intended to harm the troopers. The troopers must observe some conduct or action on the part of Appellant from which they could reasonably infer that Appellant intended to harm them. There is no such conduct or action in this case.

Additionally, the undisputed facts lead to a contrary result. After Appellant told the troopers to leave his property, Appellant walked away. It is not reasonable to infer from Appellant's retreat that Appellant was intending to harm the troopers.

The trial court's other basis for finding exigency was the troopers' desire to ensure that Appellant did not go for a weapon. This reasoning is similarly flawed. It assumes that because Appellant did not have a weapon, Appellant was retreating to obtain one. The problem, however, with this analysis, is that the troopers had no basis upon which to make this assumption. Appellant simply retreated from the troopers, carrying a small dog. He did not act in any manner from which it was reasonable for the troopers to assume that Appellant was walking away from the troopers to obtain a weapon and threaten their safety.

In sum, the trial court erred because there were no facts to support an inference that Appellant challenged the troopers' safety and, thus, no exigency that permitted the troopers to remain, and, in fact, encroach further onto Appellant's premises after he told them to leave. Thus, the troopers violated Appellant's Fourth Amendment rights once they failed to leave Appellant's

premises after he told them to leave.  Any evidence obtained after Appellant instructed the troopers to leave his premises must, therefore, be suppressed.

Order reversed.  Judgment of Sentence vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/12/2019