J-A19031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THOMAS BURNS | : | No. 69 EDA 2021 |

Appeal from the Order Entered November 18, 2020
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001951-2020

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                         **FILED NOVEMBER 24, 2021**

This appeal is from the Order of the Bucks County Court of Common Pleas, which granted the motion of Thomas Burns (Appellee) to suppress evidence seized from his person and from the motel suite in which he was arrested and all statements made by Appellee in response to police questioning following his arrest.  For the reasons set forth below, we affirm.  The pertinent facts are set forth in the trial court opinion as follows:

> On February 6, 2020 at approximately 11:00 a.m., four officers in the [Bensalem Township Special Investigations Unit ("SIU")] were on routine patrol in an unmarked vehicle.  They were in the parking lot of the Candlewood Suites…They ran the registration of a vehicle parked in the lot…The inquiry revealed the registered

---

[*] Retired Senior Judge assigned to the Superior Court.

owner of the vehicle, [Laura Kay Long, Appellee's girlfriend] had an active arrest warrant outstanding for her arrest.[1]

Trial Court Opinion at 1. The officers determined the suite number, registered in Ms. Long's name only, in which Ms. Long was staying, and recruited a housekeeper to knock on the door and announce "housekeeping." When she opened the door,

> [T]wo members of the SIU placed her under arrest in the doorway while other members of the unit immediately conducted a protective sweep of the suite. During this search, officers discovered Appellee sleeping in a bedroom. These same officers observed a clear plastic bag containing suspected methamphetamine on a night table within arms' reach of Appellee. Items of physical evidence were seized, and Appellee was transferred to police headquarters where he made a statement.

*Id*. at 1-2. At the hearing, testimony established that one of the officers was familiar with Ms. Long through previous arrests for possession of controlled substances, and that he knew Ms. Long was in a relationship with Appellee, and that it was likely that he would be with her at the motel, considered to be a known drug-trafficking area. N.T., 11/18/20 at 16, 53.

Appellee was charged with Possession with Intent to Deliver a Controlled Substance, Possession of a Controlled Substance; Possession of Drug Paraphernalia, and Criminal Use of a Communication Facility.[2] He filed a pre-

---

[1] Ms. Long's arrest warrant was for a probation violation on the underlying charge of Use of Drug Paraphernalia.

[2] 35 Pa.C.S. § 380-113(a)(30); 35 Pa.C.S. § 380-113(a)(16); 35 Pa.C.S. § 380-113(a)(32); and 18 Pa.C.S. § 7512(a).

trial motion to suppress statements made to police due to an unlawful arrest and any fruits of same, as they constituted fruit of the poisonous tree. Following an evidentiary hearing, the trial court granted the requested relief. The Commonwealth requested a 30-day continuance for trial and then sought reconsideration of the court's decision to suppress evidence seized from Appellee's person and from the motel suite, as well as Appellee's post-arrest statements made to police. Exhibit F, Motion to Reconsider Suppression Decision. Appellant also requested that the court re-open the suppression record to permit the Commonwealth to elicit testimony and admit evidence for the limited purpose of establishing that the subsequent post-arrest statement taken from Appellee, in which he admitted to possessing methamphetamine for the purpose of selling same, was not the product of any evidence obtained from the subsequent search of the motel suite based on Ms. Long's consent, which the suppression court deemed invalid. *Id*. Following hearing and argument on the Commonwealth's motion, the trial court denied both the Commonwealth's request to reconsider its suppression decision and its request to re-open the record. This appeal followed.[3]

Appellant presents the following question for our review:

Did the Court err in suppressing evidence of drugs seized in plain view and within arm's reach of Appellee from inside the motel room where he was residing, drugs seized from appellee's person

_____

[3] The Commonwealth in its notice of appeal certified that "the order will terminate or substantially handicap the prosecution." 1/12/2021 Notice of Appeal. This Court therefore has jurisdiction over this interlocutory appeal under Pa.R.A.P. 311(d).

post arrest, and statements made by appellee post-arrest, all of which resulted from a limited protective sweep of the room by police, where the Court's decision was based on the erroneous conclusion that the police officers' entry into the motel room was unlawful and not conducted pursuant to a valid protective sweep for the purpose of officer safety.

Appellant's Brief at 4.[4]

Our standard of review of a trial court's ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Duke***, 208 A.3d 465, 469 (Pa. Super. 2019) (citation omitted). We are bound by the facts found by the trial court so long as they are supported by the record. ***Id.*** In ruling on a suppression motion, the trial court, as factfinder, may pass on the credibility of witnesses and the weight to be given to their testimony; the trial court is free to believe "all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted). Because Appellee prevailed at the suppression hearing, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains

---

[4]The Commonwealth initially sought to appeal the trial court's decision to deny its request to reopen the suppression record, seeking to establish that the officers did not use or discuss any evidence obtained during what they characterized as the "second and unlawful search" of the room, based on Ms. Long's invalid consent, to elicit a consent to elicit a confession from Appellee. Appellant's Brief at 24, n.3. However, because the trial court did not premise its decision upon an invalid consent search, the Commonwealth deemed this issue moot, and did not brief it in this appeal. ***Id***.

uncontradicted when read in the full context of the record as a whole. ***Commonwealth v. Bomar***, 826 A.2d 831, 842 (Pa. 2003).

The trial court entered Findings of Fact and Conclusions of Law immediately following the hearing on November 18, 2020. N.T., 11/18/20 at 98-102. The trial court stated that it did not conclude that the police officers' initial entry into the motel suite and the arrest of Ms. Long was unlawful, or that a first level protective search was improper; rather, the trial court found that "the Commonwealth failed to meet its burden of proving that the bedroom [where Appellee was found] was immediately adjoining the place of arrest. Trial Court Opinion at 6. The trial court correctly set forth the Supreme Court's definition of the two levels of protective sweeps:

> A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." ***Maryland v. Buie,*** 494 U.S. 325, 327 [ ] (1990). (1990). ***Buie*** sets forth two levels of protective sweeps. Id. at 334 []. The two levels are defined thus:

>> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

>> Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion,

> police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

*Commonwealth v. Taylor*, [ ] 771 A.2d 1261, 1267, *cert. denied*, 534 U.S. 994 [ ] (2001).

Trial Court Opinion at 6. The trial court reviewed the testimony of several witnesses as to the room layout, noting that they agreed that there is a narrow hallway with a wall that is twelve (12) feet long, which separates the bedroom from the rest of the area, and that one could not see into the bedroom from the front door area where Ms. Long was arrested. *Id*. at 6. Furthermore, the Commonwealth did not present photos or otherwise establish the exact location of the arrest or its proximity to the bedroom.[5] *Id*.

The trial court concluded that the search therefore became an unsupportable second-level protective sweep, since the officers failed to articulate specific facts to justify the reasonable fear for their safety and the safety of others that was required. We agree. The trial court questioned Officer Farnan, one of the four officers who entered the motel suite; Officer

_____

[5] The record reveals that Appellee's counsel introduced a rough diagram with the major features in the motel suite, N.T., 11/18/20 at 44-46, and the Commonwealth argued that this was sufficient to demonstrate that Appellant's location was "immediately adjacent" to Ms. Long's arrest location; the trial court opined, however, that it could not conclude that the bedroom, which was located down a short hallway, immediately adjoined the place of arrest. Trial Court Opinion at 7.

- 6 -

Farnan stated that the "main reason," or "initial reason" the officers entered the suite was in order to arrest Ms. Long on the outstanding warrant (N.T., 11/18/20 at 22, 33); Officer Farnan testified that a second and tertiary reason was "to fully investigate the hotel room and make sure everything is up-to date…because Ms. Long and Appellant "were arrested in the past for drugs, yes." *Id*. at 33. Officer Farnan testified that when standing in the doorway to the motel suite, only the foot of the bed can be seen, and Appellant, who lay in the bed, could not be seen from the doorway. *Id*. at 53. Upon entering through the door, two of the officers initially remained in the hallway with Ms. Long, while Officer Farnan and another officer proceeded into the bedroom, where they encountered Appellant. Officer Farnan testified that he was not sure whether Appellant "was actually asleep" or "pretending to be asleep or what at that time." *Id*. at 46. The Commonwealth points to an unreported decision of this Court,[6] ***Commonwealth v. Rawlings***, No. 2638 EDA 2019 (Pa. Super. filed 7/30/20), 2020 WL 4380706, as support for its argument that the search of the bedroom area where Appellant was found was proper as part of a first level protective sweep. In ***Rawlings***, however, there is no indication of the size or set-up of the motel room, and the officers in that case were responding to a report of a domestic assault, with an arrest warrant indicating that the appellant was considered to be armed and dangerous, had violent tendencies, and was considered to be a potential escape risk. ***Id***. at *

---

[6] ***See*** Pa. R.A.P. 126(b) (non-precedential Superior Court decisions filed after May 1, 2019 may be cited for their persuasive value).

2, 9. The officers in **Rawlings** were provided a false name by the appellant when he opened the motel room door, and the police believed that they still needed to search the room for the person who had an active warrant out for his arrest. **Id**. at * 9.

Here, the trial court found that the officers' entry into the bedroom area where Appellee was sleeping constituted more than the cursory visual inspection of the space immediately adjacent to the scene of Ms. Long's arrest, i.e., the doorway in the hallway of the motel suite, which was permitted as part of the first level of a protective sweep. The trial court heard the testimony of Officer Farnan as to the set-up of motel suite number 204, as well as his testimony that the main purpose of the four officers' entry was to arrest Ms. Long for a probation violation, and their secondary purpose was to fully investigate the motel room. We may not disturb the findings of the trial court, which had the opportunity to observe the various witnesses and their demeanor, and to determine the credibility of those witnesses. We find no error or abuse of discretion in the trial court's determination to grant Appellee's motion to suppress evidence and statements. Therefore, we affirm.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *11/24/2021*