J-S10010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHARLES E. TOWNSEND :
:
Appellant : No. 1190 MDA 2024

Appeal from the Judgment of Sentence Entered July 18, 2024
In the Court of Common Pleas of Columbia County Criminal Division at
No(s):  CP-19-CR-0000247-2018

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 29, 2025**

Charles E. Townsend appeals from the aggregate sentence of 105 to 384 months in prison arising from the commission of multiple firearm and drug related offenses while he absconded from his parole supervision.  Before this Court, Hugh Taylor, Esquire, has petitioned to withdraw as Appellant's counsel and filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

We glean the following background from the certified record.  In July 2017, Appellant was released from prison to begin serving the parole portion of his sentence stemming from a conviction for third-degree murder and conspiracy to commit robbery.  As a condition of this early release, Appellant was required to report to a program called Adapt Services in Reading, Pennsylvania and then to his approved residence within forty-eight hours.

Appellant failed to appear at either location. The Pennsylvania Board of Probation and Parole ("PBPP") entered a Form 62-A delinquency notice onto the National Crime Information Center ("NCIC") database, declaring Appellant to be an absconder. The information on NCIC was readily available to all law enforcement officers and provided details about Appellant's personal data and criminal history, including his use of weapons in relation to his prior crimes.

After Appellant had eluded authorities for approximately six months, PBPP Agent Jillian Hummer was tasked with locating him. Agent Hummer began investigating near 1611 West Front Street in Berwick, Pennsylvania, approximately sixty-five miles north of Reading. She initiated her search at that residence because Appellant had previously submitted it for approval as to his release plan, but PBPP rejected it. On January 11, 2018, Agent Hummer received confirmation from a convenience store employee that Appellant shopped there on a regular basis. She thereafter spoke with the Berwick Police Department, informed them of her findings, and left her contact information in case there were any developments.

On the following day, Agent Hummer received a telephone call that she classified as an anonymous tip. The informant indicated that Appellant was at the 1611 West Front Street residence. She then requested assistance from Berwick Police, particularly Detective Gregory Martin, to aid in apprehending Appellant. In turn, Detective Martin recruited several local members of the United States Marshals Service's Fugitive Task Force, of which he was also a member.

The officers proceeded to the house, which they surveilled from outside for approximately forty-five minutes. At one point, they observed a male briefly stop by and leave with small items in his hand. As he drove away, officers performed a traffic stop, and the individual disclosed that he had just purchased marijuana and a single pill from Appellant. A short time later, Detective Martin observed Appellant come out of the house with a female and promptly return inside. Officers therefore surrounded the house, knocking for about ninety seconds and declaring their intent to take Appellant into custody. The woman inside, later identified as Margaret Walter, refused to open the door and yelled that Appellant was not present. Ultimately, officers were required to force open the door. Once inside, Detective Martin observed Walter standing near the door. He informed her that they were seeking to arrest Appellant pursuant to a warrant, although they did not have one. Walter then made a statement to the effect that Appellant lied to her by claiming not to have any warrants.

Officers swept the house and located Appellant inside of a closet that was barricaded from the outside with a desk. In plain view throughout the first floor of the house, they detected the odor of marijuana, observed various drug paraphernalia, and saw an empty firearm holster. After Appellant was apprehended, Detective Martin obtained a search warrant of the residence from Magisterial District Judge ("MDJ") Richard W. Knecht. The resulting search of the residence revealed a firearm, several more types of drugs, and drug paraphernalia.

Based on this evidence, the Commonwealth charged Appellant and Walter with numerous offenses. Appellant filed, *inter alia*, a counseled omnibus pre-trial motion. As amended, the motion sought suppression of the evidence seized by law enforcement. Appellant asserted that officers exceeded the scope of their authority by conducting a warrantless entry into the home, and further that the search warrant was invalid because MDJ Knecht's issuance of it created the appearance of impropriety, as his private law firm had represented Walter's landlord in an eviction proceeding against her several months before. Following several hearings, the court denied the suppression motion, finding that entry into the home was supported by probable cause and exigent circumstances, and that, among other things, there was no evidence that MDJ Knecht was aware of the potential conflict at the time he approved the search warrant.

Before trial, Appellant terminated counsel and chose to represent himself. During this period, he filed a motion requesting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[1] Appellant stated the primary basis for the hearing was that Detective Martin dishonestly wrote in his application for the search warrant that he informed Walter that officers had a

---

[1] As will be discussed in greater detail *infra*, a *Franks* hearing is held when a petitioner sets forth a "substantial preliminary showing that a false statement was knowingly and deliberately, or with reckless disregard for the truth, included by an affiant in his application for a search warrant[.]" *Commonwealth v. Fletcher*, 307 A.3d 742, 747 (Pa.Super. 2023) (citation omitted).

- 4 -

warrant for Appellant's arrest when they entered the home, yet in actuality they did not. The trial court denied the motion after concluding that that there was probable cause supporting the search warrant, even excluding the information objected to by Appellant, and additionally that Appellant did not prove any deliberate or reckless falsehood.

Appellant obtained subsequent counsel, and the case proceeded to a jury trial.[2] At its conclusion, the jurors convicted Appellant of all offenses, including persons not to possess a firearm, flight to avoid apprehension, and possession of heroin with intent to deliver. The trial court thereafter sentenced Appellant as indicated hereinabove.

This timely appeal followed. The trial court ordered Appellant to file a statement pursuant to Pa.R.A.P. 1925(b).[3] Counsel complied, submitting a Rule 1925(c)(4) statement expressing his intent to withdraw. The court in response entered an opinion indicating that in light of counsel's filing, it had no basis upon which to address any alleged errors on appeal.

As noted, counsel has filed in this Court an **Anders** brief and application to withdraw. The following legal principles apply to our consideration of the brief and application:

---

[2] The trial occurred in Appellant's absence since he did not appear, despite being present the day before for jury selection.

[3] We remind the trial court that it must include in every Rule 1925(b) order indication of the place the appellant can serve the statement on the judge in person and the address to which the appellant can mail the statement. **See** Pa.R.A.P. 1925(b)(3).

Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof. . . .

*Anders* counsel must also provide a copy of the *Anders* petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

If counsel does not fulfill the aforesaid technical requirements of *Anders*, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with *Anders* or file an advocate's brief on [a]ppellant's behalf). By contrast, if counsel's petition and brief satisfy *Anders*, we will then undertake our own review of the appeal to determine if it is wholly frivolous.

*Commonwealth v. Wrecks*, 931 A.2d 717, 720-21 (Pa.Super. 2007)

(citations omitted).

Our Supreme Court has further detailed counsel's duties as follows:

[I]n the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Once we conclude that counsel fulfilled all these requirements, we proceed to examine the record to determine whether the case is wholly frivolous. *See Commonwealth v. Yorgey*, 188 A.3d 1190, 1196 (Pa.Super. 2018) (*en banc*).

- 6 -

Based upon our examination of counsel's petition to withdraw and *Anders* brief, we conclude that counsel has complied with the requirements set forth above. He provided an appropriate summary of the facts and procedural history. *See Anders* brief at 5-11. The brief states that the appeal is frivolous and presents its reasons, with citation to pertinent legal authority. Further, counsel supplied the brief to Appellant and advised him of his right to hire new counsel or proceed *pro se* in this Court.

Hence, we proceed to "'make an independent judgment to decide whether the appeal is in fact wholly frivolous.'" *Commonwealth v. Flowers*, 113 A.3d 1246, 1249 (Pa.Super. 2015) (quoting *Santiago*, 978 A.2d at 354 n.5). However, we note that "when an appellant, either acting *pro se* or through private counsel, files a response to the *Anders* brief, our independent review is limited to those issues raised in the *Anders* brief. We then review the subsequent *pro se* or counseled filing as we do any advocate's brief." *Commonwealth v. Bennett*, 124 A.3d 327, 333 (Pa.Super. 2015) (cleaned up). Appellant in this case did submit a *pro se* response, which we discuss in greater detail below. We therefore limit our review to the *Anders* brief and the *pro se* filing.

Counsel identifies three issues that would arguably support an appeal before concluding that they are all frivolous. The first is whether the trial court erred in denying Appellant's omnibus motion to suppress evidence. *See Anders* brief at 16-24. The second concerns the denial of Appellant's hearing

- 7 -

request pursuant to *Franks*. *Id*. at 24-28. Finally, counsel addresses the adequacy of the search warrant obtained against Appellant. *Id*. at 28-32. We consider each contention in turn before turning to Appellant's response.

The first issue identified by counsel concerns the denial of the omnibus motion requesting suppression of evidence seized following Appellant's warrantless arrest. In this vein, we have stated:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Davis*, 241 A.3d 1160, 1171 (Pa.Super. 2020) (citation omitted).

This Court has recognized that "[b]oth the Fourth Amendment of the United States Constitution and Article 1, [§] 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Duke*, 208 A.3d 465, 470 (Pa.Super. 2019) (citation omitted). "Warrantless searches and seizures are unreasonable *per se*, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement." *Id*. (cleaned up).

- 8 -

One exception recognized by Pennsylvania courts is a search conducted "when probable cause and exigent circumstances are present." *Id*. Reviewing courts commonly consider the following factors in determining whether exigent circumstances exist:

> (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is above and beyond a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry was peaceable; and (7) the time of entry.

*Id*. at 470 n.8 (cleaned up).

In addressing this issue, Attorney Taylor opines that the search and seizure in the instant matter satisfied this exigency criteria. *See Anders* brief at 18. He recounts in detail the factual background discussed above, including that Appellant was released on parole but failed to report either to the required program or his approved residence, thus making him an absconder subject to arrest. *Id*. at 18-19. Counsel notes that the officers knew that Appellant was paroled for a prior murder charge and had used weapons in the past. *Id*. at 20. Based on the surveillance, it was certain that Appellant was inside the residence at the time law enforcement entered. *Id*. Counsel further contends that due to Appellant's quick retreat into the house after stepping out with Walter, there was strong circumstantial evidence that he knew police were there to apprehend him. *Id*. at 20-21. Finally, Attorney Taylor highlights that Agent Hummer and officers knocked on the door during daylight hours and

announced their purpose, only resorting to a forced entry when they were denied access by Walter.[4] *Id*. at 21.

Upon review, we agree with counsel that a challenge to the trial court's suppression ruling would be frivolous. The certified record fully supports the court's determination that officers had both probable cause and exigent circumstances to justify a warrantless search of the residence in order to apprehend Appellant. The facts as presented at the suppression hearing showed that he had been eluding PBPP agents for over six months, his underlying convictions were for violent offenses wherein he used a weapon, and that officers had a high likelihood of finding Appellant in the house based upon their direct observation. Further, officers entered the residence during the day and attempted to do so peaceably, trying to establish contact by knocking and announcing their presence and purpose. Appellant's act of immediately absconding from PBPP supervision was not a mere technical violation officers were at liberty to ignore. As such, the court correctly denied suppression based upon its finding of exigent circumstances. *See Duke*, 208 A.3d at 470.

The next potential issue discussed by counsel concerns whether Appellant was entitled to a *Franks* hearing. This Court has recounted:

---

[4] For its part, the Commonwealth submitted a brief to this Court wherein it expressly adopted the analyses set forth in the *Anders* brief. *See* Commonwealth's brief at 7.

> ***Franks*** held that, where a defendant makes a substantial preliminary showing that a false statement was knowingly and deliberately, or with reckless disregard for the truth, included by an affiant in his application for a search warrant and where the alleged false statement was necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request so that he might challenge the veracity and integrity of the warrant.

***Fletcher***, 307 A.3d at 747 (citation omitted). Additionally, "to mandate an evidentiary hearing there must be allegations of deliberate falsehood or of reckless disregard for the truth." ***Id***. at 747-48 (discussing ***Franks***, 438 U.S. at 171).

By way of background, Appellant's motion for a ***Franks*** hearing set forth three primary misstatements or omissions in the affidavit that purportedly warranted a hearing. First, it maintained that there was a false statement when Detective Martin told Walter that officers had a warrant for Appellant's arrest. ***See*** Motion, 2/29/20, ¶¶ 26-27, 29. Second, the motion asserted that the informant referenced in the affidavit, who disclosed that Appellant was at the 1611 West Front Street residence and who was described by Agent Hummer as an anonymous tipster, later turned out to be a police officer. ***Id***., ¶¶ 28, 34. Finally, it claimed that there was a material omission in the affidavit because it did not disclose that the detective performed an illegal search of the home prior to obtaining a warrant. ***Id***., ¶ 30.

In the ***Anders*** brief, counsel concludes that this issue is without merit, first because the trial court's order denying the motion specified that the court's finding of probable cause did not depend upon information provided by

the tipster who contacted Agent Hummer. *See Anders* brief at 26. He further

asserts:

> [A] review of the entire record indicates there is no evidence,
> much less a substantial showing, that Detective Martin knowingly
> or recklessly made any false statement. . . . Appellant did not
> make a substantial preliminary showing that a false statement
> was knowingly and deliberately, or with reckless disregard for the
> truth, in the application for a search warrant. [Counsel notes]
> that the police recovered a firearm and marijuana in a search of
> the Appellant's residence, so it strains credulity to argue that
> Detective Martin's statements about facts relating to [the holster
> and drugs] in the affidavit of probable cause were knowingly false
> or made with reckless disregard for the truth.

*Id*. at 27. Counsel lastly dismisses as meritless any contention from Appellant

that he was entitled to relief merely due to officers stating that they had an

arrest warrant, since it was clear that they could take Appellant into custody

based on the delinquency report filed by the PBPP. *Id*. at 28.

We again concur with counsel that this issue would be baseless. There

is nothing in the record convincing us that Detective Martin made any false

statement in the affidavit of probable cause "knowingly and deliberately, or

with reckless disregard for the truth." *Fletcher*, 307 A.3d at 747. Indeed,

concerning the detective's remark to Walter that officers possessed an arrest

warrant, that matter was explained at the suppression hearing. He clarified

that Appellant was a wanted person for absconding supervision, as noted in

law enforcement's NCIC system. While not having an arrest warrant *per se*,

the detective's statement was based upon receipt of the NCIC notification that

Appellant was to be apprehended on sight for absconding. *See* N.T.

Suppression Hearing, 9/19/18, at 25-26. As such, the officer clearly had the authority and direction to arrest Appellant, and the fact that he erroneously mentioned an arrest warrant to Walter is of no consequence. The semantic argument promulgated by Appellant in his motion requesting the *Franks* hearing does not satisfy his heavy burden of demonstrating dishonesty required for such a hearing.

Additionally, we see nothing in the record supporting a claim that officers omitted material information from the application for the search warrant. There was no evidence adduced by Appellant that law enforcement conducted an improper search to bolster the application for the warrant. We likewise find counsel's point correct that the adequacy of the search warrant for the house did not depend upon information provided by the anonymous tipster, who merely confirmed Appellant's presence in the house. Since it was not dispositive as to the sufficiency of the warrant, it will not form the basis for granting a *Franks* hearing. *See Fletcher*, 307 A.3d at 747 (permitting a hearing only when there is a dishonest statement "necessary to a finding of probable cause").

The final matter raised in the *Anders* brief concerns whether the search warrant was invalid for failure to comply with Pa.R.Crim.P. 206. *See Anders* brief at 28-32. With respect to the review of search warrants, this Court has elucidated as follows:

> Before an issuing authority may issue a constitutionally valid
> search warrant, he or she must be furnished with information

J-S10010-25

sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a "totality of the circumstances" test as set forth in **Illinois v. Gates**, 462 U.S. 213 (1983), and adopted in **Commonwealth v. Gray**, 503 A.2d 921 (Pa. 1985). A magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The information offered to establish probable cause must be viewed in a common sense, nontechnical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

**Commonwealth v. Manuel**, 194 A.3d 1076, 1081 (Pa.Super. 2018) (*en banc*) (cleaned up).

The content required within the application for search warrants is governed by Rule 206, which states as follows in pertinent part:

Each application for a search warrant shall be supported by a written affidavit signed and sworn to or affirmed before an issuing authority, which affidavit shall:

(a) state the name and department, agency, or address of the affiant;

(b) identify specifically the items, property, or person to be searched for and seized;

(c) name or describe with particularity the person or place to be searched;

(d) identify the owner, occupant, or possessor of the place to be searched;

(e) specify or describe the crime which has been or is being committed; [and]

- 14 -

(f) set forth specifically the facts and circumstances which form the basis for the affiant's conclusion that there is probable cause to believe that the items, property, or person identified are evidence or the fruit of a crime, or are contraband, or are expected to be otherwise unlawfully possessed or subject to seizure, and that these items or property are or are expected to be located on the particular person, or that these items, property, or persons are or are expected to be located at the particular place described[.]

Pa.R.Crim.P. 206.

Within the brief, Attorney Taylor notes that thrust of Appellant's claim relates to his belief that the affidavit of probable cause did not comply with Rule 206. Specifically, counsel notes that in a letter Appellant submitted to him approximately ten days after the notice of appeal was filed, Appellant raised concerns about the failure of the affiant to place his name on each and every page of the document. The letter also discussed worries as to the impartiality of MDJ Knecht due to his law firm's representative of the landlord against Walter in eviction proceedings several months before Appellant was apprehended. *See Anders* brief at 28, 30-31.

As to the merits, counsel contends that he "has reviewed the search warrant application in this case and discerns no error," noting that it was completed on an oft-used form prepared by the Administrative Office of Pennsylvania Courts. *Id*. at 29. He claims that in interpreting the warrant utilizing a common-sense manner, there is no authority supporting the notion that the affiant's name must be repeated on each page. *Id*. at 30. Counsel also addresses the assertion that the warrant somehow failed because it was

issued by MDJ Knecht, who purportedly had a conflict of interest. *Id*. at 30-31. He concludes:

> Appellant cannot demonstrate actual prejudice because the search warrant application is supported by probable cause. Nor [would he be able to] present an even moderately compelling argument that there was even the appearance of impropriety. There was not a scintilla of evidence in the record which suggests that the magistrate who signed the search warrant authorization was even aware that the Appellant's residence was the same one that his law partner referenced in a civil action. Not every issue which may arguably create an appearance of impropriety justifies negating the actions of the district justice.

*Id*. at 31.

We find this purported challenge frivolous. Our review of the application and affidavit supporting the search warrant confirms that it was in conformity with Rule 206. It listed the required information from Detective Martin, including his name and agency; described the items to be searched within the residence; and provided an extensive background of the information supporting probable cause for the search. The fact that the affidavit did not repeat certain redundant information on each page does not negate its compliance with the rule. Further, we would find no error with the court's conclusion that Appellant failed to establish a conflict of interest with respect to the issuing authority and the search warrant.

In sum, we agree with counsel that all the issues identified in the *Anders* brief are frivolous. Thus, we turn to Appellant's response, wherein he addresses each of the issues discussed above and largely reiterates the arguments he already advanced throughout the proceedings.

- 16 -

As to the denial of his suppression motion, Appellant contends that the Commonwealth's testimony at the corresponding hearing did not support a finding of exigent circumstances. **See** Response to **Anders** brief at 17. He suggests that the fact that officers first surveilled the area and then forcefully entered demonstrated an intent to do so without first seeking a warrant. **Id**. at 17-18. Appellant maintains that his failure to report in accordance with the terms of his parole was simply an "administrative action," not a high-gravity crime otherwise requiring drastic action. **Id**. at 18. He further claims that there was no indication that he was attempting to escape or was a risk to officers on scene at the time they entered. **Id**. at 19.

With respect to the denial of his request for a **Franks** hearing, Appellant reasserts his position that Detective Martin made a misstatement in the affidavit of probable cause when he noted his telling Walter that officers had an arrest warrant. **Id**. at 20.[5] Regarding this point, Appellant proclaims that it

> is a very serious kind of police misconduct because the affiant used that false statement to not only assert his authority to force entry inside of a private dwelling, but this statement was also made to bolster his affidavit of probable cause to improve the approval of the [MDJ] to sign off on the search warrant.

---

[5] He also mentions, without discussion to the record or pertinent authority, purported false statements in the affidavit concerning the informants that provided information to Agent Hummer and other officers prior to Appellant's arrest. However, we do not consider these claims for lack of development. **See**, **e.g.**, **Commonwealth v. Arias**, 286 A.3d 341, 349 (Pa.Super. 2022) ("Appellant's failure to develop these claims with argument, applicable authority, and pertinent analysis results in the waiver of his claims.").

*Id*. at 22.

Finally, regarding the adequacy of the search warrant, Appellant argues that "repetitive use of the [general] word 'officers' . . . denied the reader of an objective approach to know who seen [*sic*] or who did what." *Id*. at 25. He further laments that there was no "timeline" to establish the time of day in the application and that it implied at times that Appellant was impossibly in two places at once. *Id*. Appellant states that the affidavit "involves a complete omission of the affiant's actual name, the names of all the officers involved in the investigation, the omission of what items in particular was being searched for, and there was also no mention of what crime or crimes was committed, or being committed." *Id*. at 27.

Our careful consideration of these additional points raised by Appellant does not alter our conclusion that it would be frivolous for counsel to raise the above issues on appeal. Although Appellant offers creative suggestions that he was not a flight risk, despite absconding for six months, and that violating parole was simply an administrative action, this does not undermine the trial court's finding of exigent circumstances. Furthermore, Appellant's argument as to the alleged false statement by Detective Martin concerning whether he had a warrant simply rehashes the points discussed by counsel above which we have rejected. Finally, we are not persuaded by Appellant's position that the search warrant failed to comply with Rule 206; contrary to his assertion,

the factual summary contained therein was not so general or incoherent so as to deprive the factfinder of the ability to ascertain probable cause.

However, that does not end our inquiry. Appellant raises several additional matters in his written response that were not addressed directly in counsel's **Anders** brief. Particularly, he asserts prosecutorial misconduct based upon the district attorney's "overreaching" and support of the lies and misstatements made by Detective Martin within the affidavit of probable cause for the complaint. **See** Response to **Anders** brief at 30-34. He also faults the prosecution for encouraging Walter to lie on the stand against Appellant without informing the defense that it was providing her with a favorable deal, in violation of **Brady v. Maryland**, 373 U.S. 83 (1963). **Id**. at 34-41. Appellant further accuses the district attorney of hiding this agreement by omitting it from public records. **Id**. at 30.

We dispose of these claims because Appellant fails to indicate where within the record they were preserved for appeal. By his own admission, he learned about the purported deal between the prosecution and Walter a week after his trial concluded, when the Commonwealth allegedly dropped unrelated charges against her. **Id**. at 36. Since he did not present these questions to the trial court in a post-sentence motion, we will not decide them for the first time on appeal. **See** Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.Crim.P. 720(c) ("A post-sentence motion for a new trial on the ground of after-

- 19 -

discovered evidence must be filed in writing promptly after such discovery."). Additionally, the claim that the prosecution propounded the supposed deceitful statements from Detective Martin about having a warrant is unavailing. As we discussed, Appellant has not demonstrated proof of dishonesty, but rather has offered only a semantic dispute.

Based on the foregoing, we agree with Attorney Taylor that the instant appeal is wholly frivolous and, accordingly, grant counsel's application to withdraw and affirm Appellant's judgment of sentence.

Application of Hugh Taylor, Esquire, to withdraw as counsel is granted. Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/29/2025