**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONYIO MISSERI | : | |
| | : | |
| Appellant | : | No. 497 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 17, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002407-2023

BEFORE:   PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 19, 2026**

Antonyio Misseri appeals from the judgment of sentence imposed following a non-jury trial in which he was found guilty of possessing a firearm as a prohibited person, carrying a firearm without a license, publicly carrying a firearm on public streets or public property in Philadelphia, criminal mischief, fleeing or attempting to elude a police officer, and recklessly endangering another person.[1] For these offenses, Misseri received an aggregate term of six to twelve years of incarceration to be followed by one year of probation. Misseri raises two issues, first arguing that the court erroneously denied his suppression motion and, second, asserting that his sentence, as it pertains to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1); 18 Pa.C.S. § 6106(a)(1); 18 Pa.C.S. § 6108; 18 Pa.C.S. § 3304(a)(5); 75 Pa.C.S. § 3733(a); and 18 Pa.C.S. § 2705, respectively.

his conviction for publicly carrying a firearm in Philadelphia, should be vacated in accordance with this Court's holding in **Commonwealth v. Sumpter**, 340 A.3d 977 (Pa. Super. 2025) (reargument denied; *allocatur* petition pending at 377 EAL 2025). We affirm.

The court summarized the facts underpinning this case, as follows:

At the suppression hearing, the Commonwealth presented the testimony of Officer Dave Dohan, who participated in [Misseri's] arrest in the City of Philadelphia's 14th District. Officer Dohan had been a police officer for 15 years and was assigned to the 14th District for around 12 years. He testified that the 14th District, particularly near Collum Street where [Misseri] was arrested, is "a high crime area" with "drug sales and gun violence."

On March 14, 2023, around 1:18 p.m., Officer Dohan received a call from Officer Jonathan Alvarez, who advised there was a "Jeep Track Hawk" on Collum Street that resembled the same vehicle which fled from Officer Dohan and other officers a few days earlier. During the earlier encounter, Officer Dohan "ran the tag" for the Jeep[,] and "it came back stolen." Now, Officer Alvarez, who was patrolling near Collum Street, advised that the Jeep was parked[,] and he had seen an individual exit the car and walk away.

Upon arriving on Collum Street with his partner (Officer [Robert] Snyder), Officer Dohan observed the Jeep was the same vehicle that fled from him a few days earlier. It had the "[s]ame make, same color, same tint on the windows, [and] same model of year." The Jeep also had a temporary New Jersey registration tag that had already expired. When Officer Dohan checked the expired tag through the police database, he learned it was assigned to a different vehicle – *i.e.*, a Ford Econoline Van. A few moments later, [Misseri] entered the Jeep's driver's side[,] and the officers converged in their patrol cars to stop the vehicle. Officer Dohan testified that he intended to stop the Jeep because it violated [Pennsylvania's] Motor Vehicle Code due to its improper registration tag[] and because he sought "to determine if it was a stolen car."

Officers Dohan and Snyder pulled their patrol car in front of the

Jeep while Officer Alvarez pulled his patrol car beside the vehicle. Officer Dohan exited his unit in full uniform and wearing his body-worn camera, which captured much of the encounter and was admitted into evidence. As Officer Dohan approached the Jeep on foot, he saw [Misseri] "reach down and put the car in reverse." Once [Misseri] began reversing the vehicle, Officer Dohan drew his firearm and commanded [Misseri] to put the vehicle in park. Officer Dohan's body-worn camera record[ed] officers stating there was a gun in the Jeep, and Officer Dohan saw [Misseri] reach toward the area of the gun.

[Misseri] defied the officers' commands to stop and "attempted to flee the area by reversing down Collum Street." In the process, [Misseri] struck Officer Alvarez's patrol car, struck several other parked cars, almost struck Officer Alvarez, and ultimately crashed and "disabled" the Jeep. After crashing the Jeep, [Misseri] fled on foot. While other officers pursued and apprehended [Misseri], Officer Dohan put the Jeep in park and recovered the gun from the Jeep's cup holder next to the driver's seat. Later that day, Officer Dohan confirmed that the Jeep had, in fact, been reported stolen.

Trial Court Opinion, 3/21/25, at 2-3 (record citations omitted; some brackets in original).

Following his arrest, but prior to trial, at the suppression hearing, Misseri claimed that the pretextual nature and illegality of the vehicle stop warranted suppression of the firearm because:

[Misseri] claimed the officers stopped the Jeep[,] not because it violated [Pennsylvania's] Motor Vehicle Code for containing an expired registration tag for a different vehicle[] and not because Officer Dohan suspected the vehicle was stolen based on the illegal tag and his earlier encounter with a matching vehicle that had been reported stolen, but because the officers sought to investigate [Misseri] for his suspected gang activity. According to [Misseri], the officers lacked probable cause or reasonable suspicion to stop him for his suspected gang activity, which [Misseri] claims was their true purpose for executing the stop. [The court ultimately found that the officers possessed reasonable suspicion and denied suppression.]

*Id.* at 3-4 (record citations omitted).

At the non-jury trial, Officers Dohan and Alvarez testified consistent with Officer Dohan's prior testimony elicited during the suppression hearing. In particular,

> Officer Dohan again testified that he received a call from Officer Alvarez regarding the Jeep they believed was in "stolen status." Officer Alvarez advised that the Jeep was parked on East Collum Street and requested Officer Dohan to "drive by and take a look."
>
> As requested, Officer Dohan drove by and saw the Jeep had a New Jersey temporary registration tag. He checked the tag with the police database and learned it had expired and belonged not to the Jeep, but to a Ford van. When [Misseri] entered the vehicle, Officers Dohan, Snyder, and Alvarez attempted to stop the Jeep because it had a fake and expired registration tag[] and because they believed the vehicle had been stolen. However, [Misseri] immediately reversed up the street[] and[,] only after striking multiple cars[,] did the Jeep come to a stop.
>
> At that point, Officer Alvarez "was able to open a rear window by force with his . . . exp[a]ndable baton," and he "made the callout that there was a firearm inside the vehicle." Officer Dohan likewise observed the "firearm with an extended magazine in the cup holder right next to the shifter where [Misseri] was going from drive to reverse." After [Misseri] exited the crashed Jeep and fled on foot, [Officer] Dohan placed the vehicle in park and recovered the firearm.
>
> Officer Alvarez similarly testified that he observed a dark gray Jeep on East Collum Street. The vehicle had "a New Jersey temp[orary] tag on the back." Officer Alvarez "did a query of that tag, and it came back as an expired license plate for a Ford van." Based on his experience, Officer Alvarez "believed [the] vehicle was possibly stolen with a fictitious tag on the back."
>
> Officer Alvarez testified that he initially saw [Misseri] walking away from the passenger side of the Jeep. When [Misseri] returned and entered the vehicle's driver's seat, Officers Alvarez, Dohan, and Snyder attempted to stop the vehicle[,] but [Misseri] fled by

reversing up the street. [Misseri] drove the Jeep "up almost the whole length of the block" and struck multiple vehicles, including Officer Alvarez's patrol car, before the Jeep's front tires "popped" and the vehicle "came to a standstill."

When the officers re-approached the Jeep, [Misseri] "attempted to drive off again" but "it got stuck up [under] another vehicle that was parked there on the street as well." With his baton, Officer Alvarez broke the Jeep's darkly[-]tinted rear-passenger window to gain a "visual inside the car." He observed a firearm inside the vehicle, sitting in the center console area "next to the gear shifter." Officer Alvarez ordered [Misseri] "multiple times to stop reaching for the gun, not to touch the gun, to stop the vehicle." He ultimately used his taser to try subduing [Misseri], who "fled on foot[,]" but he was apprehended by other responding officers.

In Officer Alvarez's presence, Officer Dohan recovered the firearm from the Jeep's console. The gun was "loaded with 25 rounds and 1 round in the chamber." The officers conducted a "query" that "revealed [Misseri] did not have a permit to possess a firearm."

The Commonwealth lastly presented the testimony of Officer Kevin Dwyer, who works in the Police Department's Firearms Identification Unit. Officer Dwyer testified that he test[-]fired the firearm recovered from the Jeep and found it was operable.

*Id.* at 4-6 (record citations and footnote omitted, some brackets in original).

Following the court's adjudication of guilt and the subsequent sentencing thereon, Misseri filed a timely post-sentence motion, which was correspondingly denied. After that denial, Misseri filed a timely notice of appeal and concise statement of errors complained of on appeal.

Misseri presents two issues for review:

1. Did the trial court err in denying Misseri's suppression motion, which allowed the erroneous admission of evidence at trial, given that the police had no legal basis to pursue the vehicle?

2. Should Misseri's judgment of sentence be vacated and the matter remanded to the trial court consistent with this Court's

*Sumpter* decision, which was decided during the pendency of his appeal?

Appellant's Brief at 4 (questions rephrased). No relief is due.

We address Misseri's suppression claim first. Our review of "a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). Our Court is limited to reviewing "[o]nly the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted). "It is within the suppression court's sole province as fact[-]finder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some[,] or none of the evidence presented at the suppression hearing." *Commonwealth v. Duke*, 208 A.3d 465, 470 (Pa. Super. 2019) (citation omitted). "This Court is bound by the suppression court's factual findings that are supported by the record, but we are not bound by its legal conclusions, which we review *de novo*." *Commonwealth v. Camacho*, 325 A.3d 685, 689 (Pa. Super. 2024).

Here, Misseri argues that "the police were lying in wait for someone . . . when the vehicle had been legally parked[,] and the police had already seen an individual exit the vehicle and walk away without approaching the individual or obtaining a warrant to . . . search the parked vehicle." Appellant's Brief at

- 6 -

10. Nevertheless, "the police waited for someone to return to the vehicle, purportedly already knowing that the tag on the vehicle was registered to another vehicle, but . . . failing to confront the individual who entered it." ***Id.*** at 10-11. Instead, as Misseri asserts, the police waited until the vehicle began moving, resulting in the police pursuing the car "on the pretextual basis of a [vehicular] violation and to investigate whether the vehicle had been stolen." ***Id.*** at 11. In essence, with the officers waiting until the vehicle was in motion, Misseri believes that their stop was a fishing expedition, allowing the officers to tether their preexisting suspicion of his unproven gang activity to possible evidence of the same. ***See id.*** Distilled down, Misseri contends that officers never had reasonable suspicion that could allow them to stop the vehicle. ***See id***. (stating that reasonable suspicion "could have *never* . . . existed since the vehicle was parked and the police intentionally waited for it to move") (emphasis in original).

Misseri's argument fails for two reasons: (1) Misseri has failed to demonstrate any expectation of privacy in the vehicle he had been driving, which, after the vehicle's movement had been arrested, led to Officer Dolan's plain-view observation of the firearm; and (2) notwithstanding Misseri's assertion that their actions were pretextual, the officers had independent, reasonable suspicion to stop the car, based on prior knowledge and their observation of at least one discrete vehicular violation, rendering any allegation as to the pretextual nature of their actions meritless.

We start by emphasizing that "[a] defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." *Commonwealth v. Lyn*, 316 A.3d 1055, 1058 (Pa. Super. 2024) (citation omitted). As this Court noted in *Commonwealth v. Burton*, "Pennsylvania law makes clear there is no legally cognizable expectation of privacy in a stolen vehicle." 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc*) (citation omitted). We emphasize that Misseri has failed to provide *any* evidence that the Jeep was not, in fact, stolen or that the tags were correctly used.

> As summarized by this Court in *Lyn*,
>
> In *Burton*, the driver was stopped for a routine traffic violation. When the police asked for identification, they discovered that none of the car's occupants were the named lessee and none could establish their connection to the car or the named lessee. Our Court held that because the defendant offered no evidence to explain his connection to the vehicle or his connection to the registered owner of the vehicle, he failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate.
>
> 316 A.3d at 1058 (citation and internal quotation marks omitted).
>
> As the trial court, here, found, Misseri
>
> failed to establish a legitimate expectation of privacy in the Jeep he occupied. [Misseri] did not own the vehicle, it was not registered to him, and he provided no evidence that he had any authority to operate or occupy the vehicle. Indeed, the Jeep contained a false registration tag and police officers confirmed after the stop that the vehicle was, in fact, reported stolen[,] as they suspected.

Trial Court Opinion, 3/21/25, at 8. Accordingly, because Misseri had no privacy

- 8 -

expectation vis-à-vis his unauthorized use of the vehicle, Misseri's suppression claim necessarily fails. *See Lyn*, 316 A.3d at 1058.

However, even if Misseri *did* have a reasonable expectation of privacy in the vehicle upon entering it on its driver's side, the police officers still possessed indicia of at least one Pennsylvania Motor Vehicle Code violation, thereby supporting a valid vehicular stop.

> Whenever a police officer . . . has reasonable suspicion that a violation of [Pennsylvania's Motor Vehicle Code] is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number . . . or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provision of [Pennsylvania's Motor Vehicle Code].

75 Pa.C.S. § 6308(b). However, "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017) (citation omitted). In either case, if a violation is observed, an officer's "subjective motive for stopping" a vehicle is irrelevant. *Id.* at 1020. Nevertheless, as has been clarified by this Court,

> [a] police officer has the authority to stop a vehicle when he or she has reasonable suspicion that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the [Pennsylvania Motor Vehicle Code]. However, if the violation is such that it requires no additional investigation, the officer must have probable cause to initiate the stop.

*Commonwealth v. Spence*, 290 A.3d 301, 312 (Pa. Super. 2023) (citations

and emphasis omitted).

Misseri has not expounded upon the distinctions between reasonable suspicion and probable cause as applied to the facts of his case. However, and regardless of Misseri's assumption as to the officers' subjective mindsets when initiating the stop, there was clearly enough prior information ascertained about the vehicle for the officers to operate in the manner that they did.

At a minimum, the officers possessed reasonable suspicion, allowing for further investigation, that there had been a violation of the Pennsylvania Motor Vehicle Code, namely in the form of the information they had already acquired regarding the vehicle's out-of-state, mismatched, and expired registration tag. *See* 75 Pa.C.S. § 1301(a) (establishing that "[n]o person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or move upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration[]"); 75 Pa.C.S. § 1303(a) (exempting nonresident owners of foreign vehicles from registering in this Commonwealth "provided the vehicle at all times when operated in this Commonwealth is duly registered and in full compliance with the registration requirements of the place of residence of the owner").[2]

---

[2] Although we find that the police officers performed a valid stop based on the vehicle's deficient registration status, Misseri's own actions foreclose on any "second step" analysis here, i.e. an inquiry into the officers' actions vis-à-vis the suspected Pennsylvania Motor Vehicle Code violation, because he, prior to
*(Footnote Continued Next Page)*

As the court stated:

> Here, the officers observed [Misseri] enter the same vehicle they believed had fled from them a few days earlier. During the earlier encounter, the officers checked the vehicle's information through the police database and learned the vehicle was reported stolen. During the subsequent encounter, the officers observed the vehicle had a fake and expired registration tag. Under these circumstances, when [Misseri] entered the vehicle, the officers had probable cause to believe the vehicle's condition violated [Pennsylvania's] Motor Vehicle Code for its fake registration tag[] and *at least* a reasonable suspicion to believe [Misseri] was engaged in criminal behavior by possessing a vehicle that they reasonably believed was stolen.

Trial Court Opinion, 3/21/25, at 10.

Officer Dohan originally observed an identical car, a gray Jeep Trackhawk, with an expired New Jersey temporary tag that "came back [as] stolen." N.T. Suppression Hearing, 9/27/23, at 8-9. One week later, on the date of Misseri's arrest, an identical vehicle of the "[s]ame make, same color, same tint on the windows, same model of year[,]" *id.* at 10, was observed about half a mile away from Officer Dohan's initial observation. Officer Dohan ran the registration on this vehicle, "and it came back to a Ford Econoline, which that car is obviously not." *Id.* at 11. The registration on the vehicle was suspended. *See id.* After Misseri got into the vehicle, the officers activated their lights, with Officer Dohan exiting his marked vehicle in full uniform, approaching the Jeep. *See id.* at 13. Then, Misseri reached down, put the Jeep

---

any substantive interaction with the officers, immediately fled, first in the vehicle and then on foot.

- 11 -

in reverse, and proceeded to ram into, *inter alia*, parked vehicles and a police vehicle, leading to his attempted flight both in the Jeep and on foot and to the ultimate discovery of the at-issue firearm. ***See id***.

As Officer Dohan's current and prior observations matched regarding the status of the Jeep, there was clearly enough of a basis for him to initiate the traffic stop to investigate, *inter alia*, its then-suspected stolen status. Moreover, Officer Dohan testified, with enough of an articulable basis, that there was a discordancy between the car's make and model, as registered (or not registered, as was the case), and reality, which allowed him to investigate evidence of non-compliance with the vehicle code as well as potential criminality further. Accordingly, the court's factual findings were supported by the record, and its legal conclusions drawn therefrom were correct: Officer Dohan conducted a valid stop. Misseri is, therefore, due no relief on his first issue.

In his second claim, Misseri argues that our Court's decision in ***Sumpter*** "is currently good law and [Misseri] respect[fully] requests that[,] if this judgment of sentence is not reversed on his suppression argument[,] that the [C]ourt reverse the judgment of sentence as to the Section 6108 conviction and remand this matter to the trial court for additional proceedings relating to that charge." Appellant's Brief at 14.

In ***Sumpter***, a panel of this Court held Section 6108 of the Crimes Code violated, on an as applied basis, the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution. ***See Sumpter***, 340 A.3d at 980-81.

Here, the trial court found Misseri guilty of violating Section 6108 and imposed a concurrent term of imprisonment. To the extent that ***Sumpter*** announced a new rule of law with respect to Section 6108, it would only apply to Misseri's case on direct review so long as the issue was previously "preserved at all stages of adjudication." ***See Commonwealth v. Hays***, 218 A.3d 1260, 1266 (Pa. 2019) (stating, where "an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal"). However, Misseri did not raise an Equal Protection claim, either as a facial challenge or as applied, before the trial court. Thus, he failed to preserve any such claim for direct appeal.

"It is a settled principle of appellate review, of course, that courts should not reach claims that were not raised below." ***Commonwealth v. Colavita***, 993 A.2d 874, 891 (Pa. 2010) (citing Pa.R.A.P. 302(a)), ***overruled in part on other grounds***, ***Commonwealth v. Bradley***, 261 A.2d 381, 397 (Pa. 2021). "A corollary of this salutary restriction is that courts generally should not act *sua sponte* to raise claims or theories that the parties either did not raise below or failed to raise in their appellate pleadings." ***Id.*** "The rule is no

different in the constitutional context." *Id.*; *see also Commonwealth v. Cline*, 177 A.3d 922, 927 (Pa. Super. 2017) ("The law is clear that issues, even those of constitutional dimension, are waived if not raised in the trial court.") (internal quotation marks and citation omitted); *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) ("Even issues of constitutional dimension cannot be raised for the first time on appeal.").

With Misseri failing to present this claim to the trial court, he has waived review of such a contention and is due no relief.

As neither of Misseri's two arguments warrant reversal and/or remand, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/19/2026

- 14 -